BYE, Circuit Judge,
dissenting.
Before imposing a special condition of supervised release, a district court must ensure the special condition “ ‘involve[s] no greater deprivation of liberty than is reasonably necessary’ to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant’s correctional needs.” United States v. Crume, 422 F.3d 728, 733 (8th Cir.2005) (quoting 18 U.S.C. § 3583(d)(2) and citing § 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)). The imposition of a special condition of supervised release also requires the district court to “ ‘make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements.’ ” United States v. Thompson, 653 F.3d 688, 691 (8th Cir.2011) (quoting United States v. Wiedower, 634 F.3d 490, 493 (8th Cir.2011)). Our court is “ ‘particularly reluctant to uphold sweeping restrictions on important constitutional rights’” such as the First Amendment rights involved here. United States v. Kelly, 625 F.3d 516, 520 (8th Cir.2010) (quoting Crume, 422 F.3d at 733). The prohibition on A.J. Kelly’s right to possess legal photographic depictions of child nudity clearly does not satisfy any of these requirements. I therefore respectfully dissent.
The district court’s prohibition on legal material protected by the First Amendment, and our approval of the district court’s action, troubles me on so many levels it becomes difficult to know where to begin. Let me start by diffusing what I believe may be a thoughtless, knee-jerk reaction to a prohibition on material depicting “child nudity” without full consideration of how vastly different in scope and kind the prohibition becomes when one adds the single word “legal” to the prohibition — the only aspect of the special condition Kelly challenges.[4]
Legal photographic depictions of child nudity include the photographs of prepubescent children enjoying a bath undoubtedly taped to grandparents’ refrigerators throughout this country, photographs of newborn infants proudly displayed by parents on office desks or included in Christmas cards and birth announcements to friends and relatives, photographs of classical works of art such as Raphael’s “Madonna with the Christ Child,” Raphael’s “Saint John the Baptist,” or Bouguereau’s “Birth of Venus,” as well as photographs of images such as the vintage Coppertone baby ad.
The class of material depicting “legal” child nudity must, by necessity, be completely innocuous and wholly lacking in any prurient interest for it to be considered “legal,” otherwise it would inevitably fall into the category of illegal child pornography. I dare say the class of material depicting legal child nudity necessarily excludes most (if not all) photographic depictions of nude post-pubescent females.
*381 Notwithstanding the inherently innocent nature of this category of material protected by the First Amendment, a fact which seems most obvious to me while apparently escaping my colleagues, the majority places the prohibition at issue in this case somewhere between a permissible restriction on.a defendant possessing adult pornography, and an impermissible restriction on a defendant’s right to possess biology textbooks or art books depicting adult nudity. See Ante at 377-78. I am dismayed by the majority’s comparison of the photograph of a newborn baby to adult pornography, much less the suggestion that photographs I may possess of my children and grandchildren as infants and toddlers enjoy less First Amendment protection than a biology textbook depicting adult nudity.
A district court may not categorically impose particular special conditions on certain types of offenders, such as sexual offenders. Kelly, 625 F.3d at 520. “Instead, we require a particularized showing of the need for the condition in each case.” Id. Despite the majority’s conclusory assertions to the contrary, there is no particularized showing in this case of the need to prohibit Kelly from possessing legal depictions of child nudity which (I cannot strongly emphasize enough) must necessarily be lacking in any prurient interest to be considered legal.
Kelly’s criminal history shows his sexual predatory tendencies are limited to post-pubescent females. When he was nineteen years old, he sexually assaulted a former girlfriend who was eighteen years old. Presentence Investigation Report (PSR) at ¶ 40. When he was thirty years old, he was charged with sexually assaulting his girlfriend’s post-pubescent daughter, a charge proven by the fact that Kelly impregnated the girl (the same fact which also clearly establishes she was post-pubescent). Id. at ¶ 44. There is nothing in Kelly’s criminal history, or in the district court record, which shows Kelly has any sexual interest whatsoever in pre-pubescent children, or that his sexual interest in females mature enough to be menstruating will somehow be triggered by the photograph of a newborn male or a classical work of art depicting nude cherubs.
While I can acknowledge some defendants’ aberrant sexual proclivities may be triggered by the sight of a newborn’s birth announcement, the district court’s ban on Kelly’s right to possess such a photograph is based on “pure speculation or assumptions unrelated to the rehabilitative process.” United States v. Kreitinger, 576 F.3d 500, 506 (8th Cir.2009) (internal quotation marks and citation omitted). There is no testimony from a mental health expert, or any other competent evidence in this record, to indicate Kelly will be more likely to sexually assault another post-pubescent female teenager if allowed to possess, for example, a photograph of his infant son taking a bath. Cf. United States v. Bender, 566 F.3d 748, 752 (8th Cir.2009) (reversing a district court’s ban on a defendant’s ban on the possession of any sexually stimulating materials based on nothing more than the district court’s belief “sex offenders need to have a very tight rein [and have no] ... business looking at Playboy magazine”). Common sense, judicial or mostly otherwise, does not support such a connection. The rational, the thoughtful, the objective, can read the majority’s decision and judge for themselves whether it is supported by common sense. I, myself, can not believe the level of dysfunction necessary to make a grown man desire a post-pubescent female simply by viewing the photograph of a newborn infant, can be gauged by the application of common sense without requiring input from a mental health expert to explain *382 such a bizarre and aberrant thought process.
To make matters worse, the majority defends this special condition by relying upon one of the condition’s arbitrary shortcomings, the fact that Kelly is only prohibited from possessing photographic depictions of legal child nudity. Assuming for a moment common sense alone was enough for us to divine the inner workings of Kelly’s mind, and we knew without the assistance of a psychologist that viewing the image of a toddler in a bathtub would trigger in Kelly the urge to sexually molest a seventeen year-old post-pubescent female, I do not see how limiting the prohibition to photographic depictions would advance the goal of deterrence or serve Kelly’s correctional needs. For if Kelly’s aberrance is truly triggered by such images, the prohibition should include his possession of any form of such an image, including print materials, videotapes, or digital images found on the internet.
Under the district court’s condition, Kelly can watch the birth of a newborn infant on a television show such as Grey’s Anatomy, but he is subject to revocation of his supervised release if he takes a photograph of the same image while watching the show. He can possess a poster of the Coppertone baby ad, but he cannot possess a photograph of the same poster. Kelly can possess a DVD of the motion picture “Three Men and a Baby” starring Tom Selleck, but be sent back to prison for taking a photo of the DVD cover. He can find digital images of Raphael’s “Madonna with the Christ Child” on the internet and view them on his cell phone, but he cannot carry a photograph of the same image in his wallet. Kelly can possess a print copy of a diaper advertisement depicting a topless female toddler in a parenting magazine, but cannot possess a photograph of the same image. How do we explain such irrational and bizarre distinctions to a discerning and skeptical public?
The majority’s decision to affirm the district court not only erodes our applicable criminal and constitutional precedents, but it further exposes our court to the just criticism of a public which already is skeptical of the judicial system. Criminal defendants, as well as the general public, expect that “[t]he punishment should fit the crime.” DuBose v. State of Minn., 893 F.2d 169, 172 (8th Cir.1990) (Arnold, J., concurring in part and dissenting in part). What message do we communicate about our own judgment when we announce a federal firearm offender can be sent back to prison because he possessed a photograph of his newborn son, or because Kelly’s probation officer just happened to conduct a home visit on the same day a relative mailed him a birth announcement of a niece or nephew?
I, for one, expect more. I expect probation officers in the federal system to consider carefully the special conditions of supervised release they recommend and ensure such conditions are rationally connected and narrowly tailored to a defendant’s specific correctional needs, without creating absurd and illogical pitfalls and traps for defendants on supervised release. I expect the same of district courts when they consider whether to adopt those recommendations. I expect the same of the lawyers employed by the Department of Justice when defending such conditions in our courts. I also expect our appellate courts to apply the law rationally and even-handedly, and with the exercise of common sense, when determining whether such conditions comport with constitutional limits.
The majority’s decision to affirm the district court reflects a failure of our justice system on all of these levels. Because I cannot sit idly by and remain silent in *383 the wake of such failures, I must respectfully dissent.

. Because the single phrase of the district court’s special condition prohibiting Kelly from possessing legal child nudity is the only issue before us, the concurrence’s discussion of other aspects of the special condition is wholly irrelevant.