# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1956

_____

United States of America

*Plaintiff - Appellee*

v.

Cynthia Louise Hobbs

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 21, 2016
Filed: December 14, 2016

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A special condition of Cynthia Hobbs's supervised release prohibits her from "direct, indirect, or electronic contact" with her husband. Because the record does not support this sweeping restriction on her important constitutional right of marriage, we vacate and remand for resentencing.

## I. *Background*

In 2009, Hobbs and her husband were charged with aggravated identity theft and conspiring to commit bank fraud. They pleaded guilty. Hobbs was sentenced to 56 months' imprisonment and 5 years' supervised release. Her husband was sentenced to 80 months' imprisonment and 5 years' supervised release. They were ordered jointly to pay approximately $18,000 in restitution.

Hobbs entered supervision in November 2014. At first she did well. Then, in January 2016, probation moved to revoke her supervised release, alleging four violations of her release conditions. First, Hobbs moved from her registered address without telling her probation officer. Second, she failed to submit to a required urinalysis. Third, she left her job at McDonald's without telling her probation officer. (These first three violations happened in January 2016.) And fourth, Hobbs stopped making restitution payments in August 2015, the month her husband was released.

In April 2016, Hobbs appeared before the court and admitted the violations. Noting Hobbs's cooperation, the government asked that her release be modified rather than revoked. The government also asked the court to impose a condition of "no contact with her husband."

The hearing focused on the no-contact issue. The court expressed concern that Hobbs's violations were connected to her husband's release. "My understanding from speaking with the probation officer and reviewing the record," said the court, "is that Ms. Hobbs was doing very well on supervision when she was living independently and Mr. Hobbs was still incarcerated." "And then," the court went on, "this contact occurs with her spouse, and those positive steps forward cease and, in fact, she absconds from supervision. That time line seems to the court to be instructive." A probation officer established Mr. Hobbs's release date but did not establish that Hobbs had had any contact with her husband since his release.

The court then outlined its revocation sentence: 30 days' imprisonment and no marital contact.[1] The court emphasized the coincidence of Hobbs's noncompliance and her husband's release: "The court finds that the time line related to the release of her co-defendant and the introduction, reintroduction of her spouse, Jack Hobbs, into her home and her life . . . was one factor that appears to have contributed to the violations that occurred here." The court acknowledged the constitutional implications of substantially restraining Hobbs's marital liberties, but it considered the restrictions reasonably necessary for the remaining three-and-a-half years of her supervision.

The court entered an order modifying Hobbs's supervised release to include this condition:

> The defendant shall have no direct, indirect, or electronic contact with codefendant and husband, Jack Hobbs, during her term of supervised release.

Hobbs asks us to vacate the condition.

## II. *Discussion*

"A sentencing judge is afforded wide discretion when imposing terms of supervised release, and we review a decision to impose special terms of supervised release for abuse of that discretion." *United States v. Crume*, 422 F.3d 728, 732 (8th Cir. 2005) (citation omitted). Sentencing discretion is cabined by statute. 18 U.S.C. § 3583(d). The applicable statute requires, as relevant here, two things. First, special supervised-release conditions must reasonably relate to the nature and circumstances of the offense, the defendant's history and characteristics, deterring criminal conduct, protecting the public, and promoting the defendant's correctional needs. 18 U.S.C.

---

[1]Hobbs does not challenge her imprisonment.

§§ 3583(d)(1), 3553(a)(1), (2)(B)–(D); *Crume*, 422 F.3d at 733. And second, the conditions must not constrain the defendant's liberty more than reasonably necessary to deter criminal conduct, protect the public, and promote her correctional needs. 18 U.S.C. §§ 3583(d)(2), 3553(a)(2)(B)–(C); *Crume* 422 F.3d at 733.

The sentencing court's wide discretion notwithstanding, "we are particularly reluctant to uphold sweeping restrictions on important constitutional rights." *Crume*, 422 F.3d at 733. Currently, most sweeping restrictions seem to involve the Internet. *See, e.g.*, *United States v. West*, 829 F.3d 1013, 1020–21 (8th Cir. 2016) (ban on creating websites overbroad); *Crume*, 422 F.3d at 733 (ban on Internet access overbroad). Others involve library access and the parent–child relationship. *See, e.g.*, *United States v. Bender*, 566 F.3d 748, 753 (8th Cir. 2009) (library access); *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006) (parent–child relationship). The sweeping restriction in this case involves another important constitutional right—marriage. *Loving v. Virginia*, 388 U.S. 1, 12 (1967).

Because of the important constitutional interest at stake, Hobbs urges de novo review, citing *United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010). *Kelly* states that we review the constitutionality of a supervised-release condition de novo. *Id.* Some cases have cited *Kelly* for this point. *See, e.g.*, *United States v. Schaefer*, 675 F.3d 1122, 1125 (8th Cir. 2012). Other cases, though, have addressed sweeping restrictions under the abuse-of-discretion standard. *See, e.g.*, *Crume*, 422 F.3d at 732–33. Because the condition here is an abuse of discretion, we do not decide whether the stricter de novo standard might apply.

Hobbs asks us to vacate the no-contact condition because it is unconstitutional and because it violates the special-conditions statute, 18 U.S.C. § 3583(d), in two ways: (1) it is not reasonably related to the sentencing goals, and (2) it deprives her of more liberty than necessary to advance those goals. The government acknowledges that a no-contact order between spouses is a sweeping restriction on an important

-4-

constitutional right, but it argues that this record supports one. Upon review, we conclude that this record does not support one.

The district court based its decision on "the time line related to the release of [Hobbs's] co-defendant and the introduction, reintroduction of her spouse, Jack Hobbs, into her home and her life." The hearing transcript is the only explanation of the court's decision. And the only record facts at the hearing were Hobbs's admitted violations and her husband's release date, August 3, 2015. On that day, Hobbs made her last restitution payment. Five months later, she moved, left her job, and failed to provide a urinalysis, all without telling probation. But nothing in the record shows that Hobbs's husband influenced her to defy her release conditions. Her lawyer attributed her failings to a tax-lien and holiday-induced drug relapse. He did mention that the Hobbses were co-defendants in a pending state case, but he did not tell the district court anything else about that case.

On this record, then, the timeline-based decision was "pure speculation or assumption[]." *Schaefer*, 675 F.3d at 1124 (quoting *United States v. Fenner*, 600 F.3d 1014, 1027 (8th Cir. 2010)). The evidence did not justify effectively divorcing Hobbs from her husband during supervision to achieve any valid sentencing purpose. 18 U.S.C. § 3583(d)(2). *United States v. Smith*, on which the district court relied, is not to the contrary. 436 F.3d 307 (1st Cir. 2006). *Smith* upheld a special condition separating the defendant from his daughter after his efforts to contact her "produced both a state court restraining order and a trespass notice." *Id.* at 312. The rationale was public protection. *Id.* That rationale simply does not apply here.

Nor are the government's legal authorities controlling or persuasive. *United States v. Rodriguez* upheld a special condition prohibiting the defendant from contacting her husband without probation's approval (a notably less restrictive condition than a blanket no-contact order). 178 F. App'x 152, 159 (3d Cir. 2006). She had committed her crimes—lying in a gun purchase—at her husband's behest. *Id.* at

158. The rationale was reducing recidivism and protecting the public. *Id.* But nothing here suggests that Hobbs's husband induced her crimes. The presentence report declares them "equally culpable." The government's other main case, *State v. Tanner*, is closer. 727 S.E.2d 814 (W. Va. 2012). *Tanner* upheld a parole condition separating a couple who made and used methamphetamine together. *Id.* at 816. The rationale was reducing recidivism. *Id.* at 821. Certainly the Hobbses were criminals in concert. But the condition here was unrelated to the underlying offense, and the record does not connect Hobbs's violations to her husband's release, apart from the timing of her August 2015 violation. The evidence, then, is insufficient to support the restriction.

"[T]he state is inserting itself into [Hobbs's] marital relationship in an overly broad way, and the condition thus involves a greater deprivation of liberty than is reasonably necessary." *United States v. Chong*, 217 F. App'x 637, 639 (9th Cir. 2007); *see also United States v. Napulou*, 593 F.3d 1041, 1046–47 (9th Cir. 2010) (vacating a condition barring contact with the defendant's "life partner"). There is no suggestion, either, that the district court considered more narrowly tailored alternatives. It therefore abused its discretion. Because we vacate the condition under § 3583(d)(2), we do not consider whether it violates § 3583(d)(1) or is per se unconstitutional.

Hobbs asks us to remand with a closed record. When the government has had a full and fair opportunity to present its evidence, we follow "'the traditional path' of limiting [it] to one bite at the apple." *United States v. Thomas*, 630 F.3d 1055, 1057 (8th Cir. 2011) (quoting *United States v. King*, 598 F.3d 1043, 1050 (8th Cir. 2010)). The legal issue here was clear, and the government's failure of proof is inexcusable. *United States v. Johnson*, 710 F.3d 784, 790 (8th Cir. 2013). It moved to revoke Hobbs's release in late January 2016. The hearing was in early April. The government had ample opportunity to build its case. The transcript indicates that the parties knew the no-contact issue was coming. The district court had even researched it. "Because

the government knew of its obligation and inexcusably failed to meet it, this case is remanded without the opportunity to expand the record." *Id.*

## III. *Conclusion*

Accordingly, we vacate the no-contact condition and remand for resentencing.

_____